938 So.2d 847 (2005)
Thomas A. BLANTON, Individually, and as Derivative of Flexlink LLC, and T. Lee Horne, III, Individually, and as Horne Partnership, Appellants
v.
Jenelle C. PRINS and Bradley, Curley, Asiano & McCarthy, Appellees.
No. 2002-CA-01464-COA.
Court of Appeals of Mississippi.
November 15, 2005.
Rehearing Denied June 13, 2006.
*848 Dennis L. Horn, Madison, Wayne E. Ferrell, Jr., Jackson, attorneys for appellants.
Monica Rene Morrison, S. Robert Hammond, Jr., Hatiesburg, Amanda Clearman Waddell, Gulfport, attorneys for appellees.
Before KING, C.J., CHANDLER and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. In a legal malpractice suit by members of a limited liability company ("LLC") against an attorney and firm representing the LLC, the Chancery Court of Forrest *849 County held for the LLC's attorney, Jenelle Prins ("Ms.Prins"), and her law firm, Bradley, Curley, Asiano & McCarthy ("Bradley Curley").[1] Aggrieved by this decision, the LLC members, Blanton and Horne,[2] appealed. Finding no error, we affirm.

FACTS
¶ 2. In 1995, Blanton, Dougal Prins, and Rocque Kramer ("Kramer") formed Flexlink, LLC ("Flexlink") in order to enter a contract with NATO to provide satellite communications in Bosnia. Kramer was appointed chairman of the executive committee of Flexlink, though Kramer, Blanton, and Dougal Prins had equal shares of the company. To fulfill its contract with NATO, Flexlink entered into a Memorandum of Understanding ("MOU") with Interstate Electronics Corporation ("IEC") for IEC to provide hardware for testing and implementing the communications system. Because the MOU required Flexlink to pay for the hardware, Flexlink negotiated a line of credit of $150,000 from Horne, in exchange for which Horne would receive five percent of the revenue stream from IEC to Flexlink. The MOU additionally included a net revenue split between IEC and Flexlink after recoupment of IEC's investment and operating expenses, as well as providing the duration of the agreement (a maximum of three years).
¶ 3. Horne received all of the money he provided to Flexlink by the end of July 1996, and was thereafter paid five percent of the revenue stream paid to Flexlink.
¶ 4. In July 1998, Dougal Prins sold his interest in Flexlink to Kramer, thereby making Kramer the majority (2/3) shareholder. Dougal Prins thereafter died of a terminal illness. In December 1998, Horne filed a complaint in Florida against Flexlink and each of its members alleging his ownership interest in the company. Kramer, acting as chairman, hired Ms. Prins (Dougal Prins' daughter) and Bradley Curley (Ms. Prins' firm) to defend Flexlink against Horne's action, though Blanton objected to such representation. On February 16, 1999, Blanton filed suit in the Chancery Court of Forrest County for an accounting of Flexlink. Ms. Prins represented Flexlink in that lawsuit as well. At some point during the course of these disagreements, Kramer removed all of Flexlink's funds from Deposit Guaranty National Bank in Mississippi and placed them in James Monroe Bank in Arlington, Virginia.
¶ 5. In April 1999, Kramer became aware that IEC planned to terminate the MOU with Flexlink and did not intend to distribute the fourth quarter revenues. At this point, Ms. Prins, after consulting with other attorneys who were of the opinion that Flexlink would lose if the matter came to trial, drafted a demand letter to IEC, making a settlement offer. In June 1999, settlement negotiations between Flexlink and IEC began, primarily undertaken by Kramer on Flexlink's behalf. IEC gave Flexlink a June 30, 1999 deadline to settle because of a pending merger/sale of the company. Ms. Prins alleged that on June *850 25, 1999, Gene Fair, associated counsel for Flexlink in Mississippi, telephoned Blanton's attorney's office and informed one of the attorneys there of the pending settlement with IEC. The ultimate settlement resulting from these negotiations (on June 29, 1999) was $775,000, which was subsequently wired to Flexlink's account in Virginia.
¶ 6. Blanton alleged at trial that Kramer's consulting agreement with IEC during the period of January 1, 1999 to June 29, 1999, when Kramer also served as chairman of Flexlink, constituted a conflict of interest, and that Ms. Prins had knowledge of such conflict.[3] Blanton further alleged that Ms. Prins knew of Kramer's funds transfer from Deposit Guaranty National Bank in Mississippi to James Monroe Bank in Virginia. Blanton additionally argued that information concerning the settlement between Flexlink and IEC was intentionally withheld from him by Kramer, and that Ms. Prins "aided and abetted" Kramer in concealing that information from him. Blanton alleges that Ms. Prins' failure to notify him of the transfer of funds and failure to notify him of the settlement information constituted breach of her fiduciary duty (as counsel for Flexlink) to him (as a member of Flexlink). Blanton alleges that such breach of fiduciary duty by Ms. Prins constituted legal malpractice. Accordingly, Blanton brought both derivative and personal claims against Ms. Prins and Bradley Curley for legal malpractice.
¶ 7. The chancellor sub judice stated that Blanton did not meet the requirements of Miss.Code Ann. § 79-29-1102 because he failed to provide written demand to Flexlink. The chancellor stated that, as a result, Blanton had no standing to bring a derivative claim on behalf of Flexlink. The chancellor further noted that if Blanton were allowed to sue on behalf of Flexlink, the benefits derived from the suit would go to Flexlink, thus benefitting Kramer as well, with whom Blanton had already settled at the time of trial. The chancellor opined that such would impermissibly put Kramer "on both sides of the fence." Thus, only Blanton's personal claims against Ms. Prins and Bradley Curley remained.
¶ 8. As to Blanton's personal claims, the chancellor sub judice stated that no attorney-client relationship existed between Ms. Prins and Blanton so as to create any fiduciary duty. The chancellor also found that the efforts made by counsel for Flexlink and its management to advise Blanton of developments concerning the settlement were reasonable, if such notice and advice were even required. The chancellor stated that Blanton thus failed to meet his burden of proving breach of fiduciary duty even if such duty existed. As a result, the chancellor dismissed the case with prejudice.
¶ 9. Aggrieved by the chancellor's decisions, Blanton and Horne appeal. Blanton's assignments of error on appeal, while numerous and overlapping, may be summarized as follows: (1) whether the chancellor erred by failing to find a fiduciary duty owed to Blanton by Ms. Prins; (2) whether the chancellor erred by failing to find that Ms. Prins breached her fiduciary duties to members of the LLC and thus committed legal malpractice; (3) whether the chancellor applied an incorrect standard of law in failing to recognize standing of a member of an LLC to bring a derivative action under the Mississippi LLC Act.
*851 ¶ 10. Horne alleges that: (1) the chancellor erred in holding that Ms. Prins did not commit legal malpractice and did not breach her fiduciary duty to Horne; and (2) that the chancellor erred in concluding that Horne's attorney could not participate in the trial sub judice.

STANDARD OF REVIEW
¶ 11. This Court "will not disturb the findings of a chancellor unless we find an abuse of discretion, an erroneous application of the law or a manifest error." Brawdy v. Howell, 841 So.2d 1175, 1179 (¶ 8) (Miss.Ct.App.2003). "If we find substantial evidence in the record to support the chancellor's findings, we will not reverse." Id. The standard of review for questions of law is de novo. Consolidated Pipe & Supply Co. v. Colter, 735 So.2d 958, 961 (¶ 13) (Miss.1999).

ISSUES AND ANALYSIS
I. Whether the chancellor erred by failing to find a fiduciary duty owed to Blanton and Horne by Ms. Prins.
¶ 12. Blanton and Horne first allege that the chancellor erred in finding that Ms. Prins owed them no fiduciary duty as counsel for Flexlink. Blanton alleges that Kramer's interests were in conflict with Blanton's, and that when Ms. Prins became aware of this, she was under a duty to withdraw as Flexlink's counsel because she also represented Kramer personally. Blanton further alleges that Ms. Prins owed him a duty to inform him of Kramer's transfer of Flexlink funds from Mississippi to Virginia. In addition, Horne alleges that Ms. Prins failed to make disclosures required by the Mississippi LLC Act concerning the settlement with IEC. The chancellor at trial found no such fiduciary duties, and further stated that even if such duties existed, the efforts of counsel and management for Flexlink to convey settlement information to Blanton were reasonable.
¶ 13. We agree with the chancellor sub judice that no breach of fiduciary duty occurred even if such duties existed. As a result, this issue is moot.
II. Whether the chancellor erred by failing to find that Ms. Prins breached her fiduciary duties to members of the LLC and thus committed legal malpractice.
¶ 14. Blanton argues that the alleged fiduciary duties owed to him by Ms. Prins were breached when she "aided and abetted" Kramer in concealing from him information about the settlement with IEC and the transfer of funds from Mississippi to Virginia. Additionally, Blanton argues that Kramer's interests were adverse to his, and that when Ms. Prins became aware of such conflict of interest, her failure to withdraw as counsel constituted breach of fiduciary duty and legal malpractice.
¶ 15. In order to recover in a legal malpractice action, the plaintiff has the burden of proving by preponderance of the evidence: (1) the existence of an attorney-client relationship, (2) negligent handling of the client's affairs by the attorney, and (3) that such negligence proximately caused injury to the client. Luvene v. Waldrup, 903 So.2d 745, 748(¶ 10) (Miss. 2005). To prove negligence in a legal malpractice case, the plaintiff must show that the attorney failed "to exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated." Id. For the proximate cause element of a legal malpractice action, "the plaintiff must show that, but for their attorney's negligence, he would have been successful in the prosecution or defense of the underlying action." Id.
*852 ¶ 16. Here, the chancellor sub judice found that no attorney-client relationship existed between Blanton and Ms. Prins. We agree. Ms. Prins's duty was to the entity, Flexlink, rather than to its individual members. As there is substantial evidence in the record supporting the chancellor's finding as to this issue, we affirm as to this assignment of error.
¶ 17. We also hold that there was substantial evidence in the record to support the chancellor's finding that no breach of duty occurred, even if such a relationship existed. There is evidence in the record that Gene Fair telephoned the office of Blanton's attorney and communicated that settlement negotiations were taking place. Furthermore, Ms. Prins and Gene Fair testified that they were at all times during the matter at issue acting in what they thought to be the best interests of Flexlink.
¶ 18. As to Blanton's assertions that uncontradicted expert testimony at trial established that Ms. Prins violated her fiduciary duties, we disagree. The expert testimony which allegedly uncontradictedly established Ms. Prins breach was based largely on hypotheticals posed by Blanton's attorney at trial. Examination of the testimony shows that the chancellor's findings as to this issue are supported by substantial evidence. For the above reasoning, we find that Blanton did not meet his burden in this case and thus affirm the findings of the chancellor as to this assignment of error.
III. Whether the chancellor applied an incorrect standard of law in failing to recognize standing of a member of an LLC to bring a derivative action under the Mississippi LLC Act.
¶ 19. Blanton next argues that the chancellor erred in holding that he did not have standing to bring a derivative claim under Mississippi Code Annotated §§ 79-29-101 to -1201, otherwise known as the Mississippi LLC Act. The Mississippi LLC Act states in § 79-29-1102:
No member may commence a derivative proceeding until:
(a) A written demand has been made upon the limited liability company to take suitable action; and
(b) Ninety (90) days have expired from the date the demand was made unless the member has earlier been notified that the demand has been rejected by the limited liability company or unless irreparable injury to the limited liability company would result by waiting for the expiration of the ninety-day period.
Miss.Code Ann. § 79-29-1102 (Rev.2001). The chancellor sub judice stated that Blanton's failure to make demand rendered him without standing to bring a derivative suit on Flexlink's behalf.
¶ 20. "[A]n action to redress injuries to a corporation . . . cannot be maintained by the stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are merely derivative." Bruno v. Southeastern Services, Inc., 385 So.2d 620, 622 (Miss.1980). The same rule applies to LLC's and their members. The purpose of the demand requirement is to allow the corporation (or LLC in this case) to take action, if it determines that such action is warranted, to prevent divisive legal action. See Longanecker v. Diamondhead Country Club, 760 So.2d 764, 769-70 (¶¶ 12-13) (Miss.2000).
¶ 21. Blanton argues that Mississippi Code Annotated § 79-29-802 (Rev.2001) *853 does not require notice in this situation. Mississippi Code Annotated § 79-29-802 deals with dissolution of an LLC by decree of a chancery court whenever
[t]he managers or the members in control of the [LLC] have been guilty of or have knowingly countenanced persistent and pervasive fraud or abuse of authority or persistent unfairness toward any member, or the property of the limited liability company is being misapplied or wasted by such persons.
Miss.Code Ann. § 79-29-802 (Rev.2001). We do not see this behavior present in the case here. While some of the actions taken by Kramer in this case may be unsatisfactory from Blanton's perspective, the conclusions of the chancellor as to this issue are supported by the evidence and evince no clear misapplication of the law. Thus, the chancellors conclusions as to this issue will not be overturned. Furthermore, Blanton settled all matters with Kramer prior to the beginning of the trial in this case. We find Blanton's further arguments pertaining to his interpretations of the Mississippi LLC Act equally unpersuasive. As such, we affirm as to this assignment of error.
IV. Whether the chancellor erred in concluding that Horne's attorney could not participate in the trial sub judice.
¶ 22. Horne challenges the decision of the chancellor not to allow Horne's attorney to question witnesses in the trial sub judice. All parties were in agreement below that Horne's claim existed only as to a derivative action on behalf of Flexlink because of Horne's interest in the Flexlink revenue stream. Because we affirmed the chancellor's decision, as explained above, that Blanton had no standing to bring a derivative claim on Flexlink's behalf, this point is moot. We also note that Horne's attorney at trial, Wayne E. Ferrell, Jr., agreed with the chancellor that he could ask questions through Blanton's attorney by "whisper[ing] to him and say[ing], ask [the witness] this." As such, we find that Horne's interests were fairly represented in the matter. For the above reasoning, we affirm as to this assignment of error.
¶ 23. THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] The action began as a suit by Thomas A. Blanton ("Blanton") for an accounting of Flexlink, LLC with numerous cross-claims and counter-claims against several defendants, but as of the time of trial, Lee Horne, III ("Horne") and Blanton had settled their claims against the other defendants and only the claims against Ms. Prins and Bradley Curley remained.
[2] Whether Horne was actually a member of the LLC was initially a hotly disputed issue, but settlement of the matter was reached prior to trial, and such determination is not relevant to our analysis here.
[3] Blanton's and Horne's claims will be discussed together, unless otherwise necessary, for purposes of conciseness. Additionally, references to "Ms. Prins" will hereinafter refer to both Ms. Prins and the Bradley Curley firm.